635 A.2d 382

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Robert Kenneth BOYD.

Misc. Docket (Subtitle BV) No. 5 Sept. Term, 1992.

Court of Appeals of Maryland.

Jan. 11, 1994.

Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Robert Kenneth Boyd, Elkton, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE \*, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

Robert K. Boyd is the subject of a Petition for Disciplinary Action filed by the Attorney Grievance Commission, which charges him with multiple violations of the Rules of Professional Conduct. The charges, based on complaints filed by one of respondent's former secretaries and by Bar Counsel, relate generally to respondent's alleged failure to comply with state and federal tax laws, misrepresentations he made as settlement agent in two related real estate transactions, and misrepresentations he made to an investigator for the Attorney Grievance Commission. Judge J. Frederick Price of the Second Judicial Circuit held a hearing on the petition, and subsequently issued findings of fact and conclusions of law. Judge Price found that respondent had violated a number of the Rules and characterized respondent's conduct as "a willful disregard for the law and the Rules of Professional Conduct." Respondent filed exceptions, challenging the sufficiency of the evidence to support virtually all of the findings.

In reviewing the multiple findings made by the hearing judge, we accept findings of fact made by the hearing judge if they are supported by clear and convincing evidence, and are not clearly erroneous. *Attorney Griev. Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102 (1992); *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 402, 593 A.2d 1087 (1991).

## COMPLAINT ORIGINATED BY SECRETARY

Judge Price found the following facts to have been established by clear and convincing evidence. Respondent is a sole practitioner, maintaining an office at 140½ E. Main Street,

---

\* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Elkton, Maryland, who was admitted to the bar in 1966. In June, 1988, he hired Sandra Yeadon to be his secretary. At the time he hired her, Ms. Yeadon had no experience as a bookkeeper or legal secretary, although she did have some general secretarial experience. Ms. Yeadon was trained for two weeks by her predecessor, Saundra Carpenter.

Ms. Yeadon's duties as secretary included writing checks on the office account, including her own paycheck. Checks were then submitted to respondent for his signature. Ms. Yeadon remained in his employment until February, 1990, but at no time did respondent have her keep a payroll ledger or withholding records, complete W-4 forms, or prepare any checks for the payment of taxes. Although he asked her to complete tax records for the business, she informed him that she was unable to do so.

On February 8, 1990, respondent signed a paycheck in the amount of $230.04 made payable to Sandra Yeadon. That amount represented her wages for one week after withholding taxes. The check was dishonored, however, because respondent's bank account, at the People's Bank of Elkton, was under a writ of attachment. The following week respondent issued another paycheck in the same amount, but that check was also dishonored. As a result, Ms. Yeadon resigned. She ultimately recovered the amount of her wages from the Division of Labor and Industry.

On October 10, 1990, Ms. Laverne Tome began work as respondent's secretary. Like Ms. Yeadon, Ms. Tome had limited secretarial and bookkeeping experience. At no time in her employment did she receive any instruction from respondent regarding proper bookkeeping procedures or compliance with tax laws. At the end of her first week, per respondent's instructions, Ms. Tome made out her own paycheck without withholding any taxes. The bank dishonored the check for insufficient funds.

The following week Ms. Tome, without any assistance from respondent, determined the amount to be withheld from her paycheck. She did so in part by referring to a payroll ledger

she found, unused, in her office. She made out her second paycheck to reflect the proper deductions, but again the check was dishonored when presented for payment. After a confrontation with respondent Ms. Tome resigned, and later recovered her wages from the Division of Labor and Industry.

Respondent employed Melissa Carter as his secretary from April 1, 1991 until May 16, 1991. Like her predecessors, she had taxes withheld from her paychecks.[1] Nevertheless, Judge Price found that respondent at no time paid any taxes, state or federal, in connection with Ms. Carter's employment or that of her predecessors. The judge also found that respondent willfully: failed to keep a separate ledger account for employee withholding tax purposes; failed to file withholding tax returns for his employees; failed to keep taxes which were withheld from his employees' pay checks in trust and instead used the funds for his personal and/or business purposes; failed to provide withholding information to his employees via W-2 forms; failed to obtain information to determine the amounts to be withheld from his employees' pay checks via W-4 forms; and failed to keep accurate payroll records for his employees.

For the most part respondent admits that he did not comply with the law, but contends that his noncompliance was not willful. Instead, he blames his secretaries, asserting that "while the ultimate responsibility for the payment of any taxes due is with the respondent, the responsibility and the job of the employee in a sole practitioner's office for filling out said forms, keeping the books, billing, filing, etc. is with the secretary. Why else hire a girl? Just to answer the phone?" Judge Price rejected his contentions. He found that respondent lacked credibility, but by contrast, Ms. Yeadon and Ms. Tome were fully credible. He also found that respondent was solely responsible for his failures to comply with the law.

---

1. The only paycheck issued without the appropriate deductions was the first paycheck issued to Ms. Tome.

## A. *Failure to Maintain Withholding Ledgers and a Withholding Account*

Despite respondent's exceptions to the contrary, we agree with Judge Price that respondent failed to maintain ledgers for employee withholding purposes, in violation of § 10–906(c) of the Tax–General Article, Maryland Code (1988, 1989 Cum. Supp.).[2] Respondent admits that he did not maintain a separate bank account for withholding purposes, but argues that a ledger account sheet introduced as Exhibit 20 by Bar Counsel shows that he maintained withholding records. Contrary to respondent's assertion, the testimony reveals that the ledger account sheet was one of many *blank* payroll ledgers found in a file cabinet by Ms. Tome. With another employee's assistance, she determined various amounts of withholding and she partially completed one of the payroll ledger pads.

The ledger sheet with Ms. Tome's entries was the only ledger sheet used by anyone in respondent's office, and Ms. Tome's handwritten entries were the only entries on the sheet. Although respondent argues that he constructively provided the ledger sheets by simply having them in the office, Ms. Tome testified that respondent was not aware that she used the payroll ledger book to record withholding amounts. Judge Price found the testimony of Ms. Tome, and not respondent, to be credible, and therefore rejected respondent's assertion that he provided the ledger sheets. The hearing judge

---

2. Judge Price also found that respondent violated Rule 8.4 of the Rules of Professional Conduct. In fact, Judge Price found that every one of respondent's transgressions was a violation of Rule 8.4. For that reason, we will not specifically identify Rule 8.4 as a basis for each specific violation throughout this opinion. It is appropriate at this juncture, however, to set forth the relevant text of the rule:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \* \* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

(d) engage in conduct that is prejudicial to the administration of justice. . . .

"may elect to pick and choose which evidence to rely upon[,]" *Attorney Griev. Comm'n v. Nothstein,* 300 Md. 667, 684, 480 A.2d 807 (1984) (citations omitted), and he may base his findings on the testimony of a single witness. *Attorney Griev. Comm'n v. Miller,* 301 Md. 592, 602–03, 483 A.2d 1281 (1984). Thus, we accept Judge Price's finding that respondent did not maintain a ledger for withholding purposes.

B. *Failure to Maintain Withholding Trust Account*

■ Judge Price also found that respondent willfully failed to keep his employees' withholding taxes in trust, in violation of § 10–906(b) of the Tax–General Article,[3] and instead used the funds for business or personal reasons. Although respondent admits that he did not keep a separate withholding account, he argues that he did keep the funds in his general office account, and utilized them only for payroll and office expenses, not for personal or non-firm purposes.[4]

Respondent misunderstands the nature of a trust account maintained for the deposit of employee withholding taxes. The language of § 10–906(b) of the Tax–General Article explicitly states that income taxes withheld from employees are held in trust for the State by the employer. Moreover, those monies are not to be spent; they belong to the State. The fact that respondent used them to support his business, and not his personal endeavors, is of no consequence, and does not relieve him of responsibility for his failure to hold the funds in trust for the proper authority. Thus, we accept Judge Price's finding that respondent violated § 10–906 by failing to maintain a withholding trust account, and by failing to save withheld taxes in trust for the government.

---

**3.** Section 10–906(b) provides:
 Any income tax withheld is deemed to be held in trust for the State by the employer or payor who withholds the tax.

**4.** Respondent acknowledges that personal funds were also deposited into the practice's general account.

### C. *Failure to File Withholding Returns and Pay Withholding Taxes*

Next respondent objects to Judge Price's findings that he *willfully* failed to file withholding tax returns, in violation of 26 U.S.C. § 7203 [5] and § 10–804 of the Tax–General Article,[6] and failed to pay withholding taxes for his employees, in violation of 26 U.S.C. § 7203 and § 10–906(a) of the Tax–General Article.[7] Respondent's contention that he did not "willfully" violate federal and state tax provisions is the same argument made by the petitioner in *Johnson v. State*, 294 Md. 515, 451 A.2d 330 (1982), and rejected by this Court. Johnson, also a Maryland attorney, was found guilty of willful failure to file Maryland income tax returns in violation of then Maryland Code (1957, 1980 Repl.Vol.) Art. 81, § 320, which is now §§ 13–1001 and 13–1022 of the Tax–General Article.[8] Johnson argued that because there was no evidence to show that his failure to file the state returns was willful, the trial judge was wrong in not granting his motion for judgment of acquittal on the income tax offense. We

---

**5.** 26 U.S.C. § 7203 provides:
 Willful failure to file return, supply information, or pay tax.
 Any person required under this title to pay any ... tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such ... tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor....

**6.** Section 10–804 contains the general requirements pertaining to tax returns, and requires, in part, that "[e]ach person ... file an income tax return ... whether or not ... the person owes income tax...."

**7.** Section 10–906(a) provides:
 Except as provided in § 10–907 of this subtitle, each employer or payor shall:
 (1) withhold the income tax required to be withheld under § 10–908 of this subtitle; and
 (2) pay to the Comptroller the income tax withheld for a period with the withholding return that covers the period.

**8.** Sections 13–1001 and 13–1022 are the penalty aspects of the current § 10–804, the tax provision respondent is charged with violating.

rejected his contention because proof of an intent to defraud the government is not required to establish a violation of the statute; willfulness may be established merely by proving a voluntary, intentional violation of a known legal duty. *Johnson, supra,* 294 Md. at 518–19, 451 A.2d 330. *See also Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 460, 374 A.2d 354 (1977) (willfulness is established by proof of a voluntary, intentional violation of a known legal duty). We have reached the same conclusion on other occasions where an attorney's failure to pay taxes or file income tax returns was at issue. *See Attorney Griev. Comm'n v. Baldwin,* 308 Md. 397, 404, 519 A.2d 1291 (1987).

In this case, the testimony shows that respondent knew the quarterly tax forms were mailed to his office and had to be filed, and knew that his secretary could not complete them. Respondent admitted that the withholding taxes were never remitted to the Internal Revenue Service or the Maryland Comptroller of the Treasury, and that unemployment taxes for Sandra Yeadon were not paid until she filed for unemployment benefits and was denied. Because the duty of an employer to file withholding returns and pay withheld taxes is a known legal duty, these facts and *Johnson* support the hearing judge's conclusion that respondent's failures were willful.[9]

█ The fact that respondent filed the appropriate forms and paid the taxes when Bar Counsel notified him of the bookkeeping and payroll withholding problems does not re-

---

9. *See also Leet v. State,* 203 Md. 285, 293, 100 A.2d 789 (1953) (because "all are presumed to know the law," attorney could not use ignorance of the law to avoid conviction of failure to pay income tax); *Rheb v. Bar Ass'n of Baltimore,* 186 Md. 200, 204, 46 A.2d 289 (1946) (attorney's admission that he knew the legal requirements for filing tax returns and that he had neglected his duty to file, coupled with his admitted failure to keep adequate records, justified a finding that he deliberately failed to make returns or keep records); *Allnutt v. State,* 59 Md.App. 694, 704, 478 A.2d 321 (evidence that defendant in prior years paid Maryland income taxes was sufficient to demonstrate that his failure to file returns in a later year was purposeful, deliberate, voluntary, and intentional), *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984), *appeal dismissed,* 471 U.S. 1050, 105 S.Ct. 2108, 85 L.Ed.2d 474 (1985).

lieve him of responsibility for his failures to do so on time. The evidence indicates that he had knowledge of the payroll problems before Bar Counsel notified him of them. He admitted that he knew as of April 1990 that Sandra Yeadon's unemployment taxes had not been paid, and stated that he was aware in May 1990 that a paycheck to another employee, Jean Mitzel, had bounced that same month. Respondent's subsequent curative action does not mitigate his offense, particularly when it was Bar Counsel's investigation that prompted respondent to file and pay. *Baldwin, supra,* 308 Md. at 404–05, 519 A.2d 1291 (finding of misconduct upheld where attorney knew he had a responsibility to fill out employee tax forms at regular intervals and remit the taxes withheld, and failed to do either until pressed by the state Comptroller). *See also Louisiana State Bar Ass'n v. Hopkins,* 447 So.2d 464, 466 (La.1984) (no mitigating factor found where respondent knew that client had not been paid settlement money and failed to rectify the situation until contacted by the state professional responsibility committee); *Grievance Adm'r v. Nickels,* 422 Mich. 254, 373 N.W.2d 528, 531 (1985) (fact that, at the conclusion of a disciplinary hearing, respondent reimbursed employee, who received default judgment against him for taxes he purportedly withheld from her income but failed to remit to the proper authorities, is of little or no significance). Thus, we accept Judge Price's finding that respondent willfully failed to file withholding returns or pay withholding taxes.

### D. *Failure to Maintain Payroll Records*

Respondent also objects to Judge Price's finding that he willfully failed to keep accurate payroll records for his employees. 26 U.S.C. § 7203. He contends that there was no proof that he failed to keep such records, that any records kept were inaccurate, or that any failures in that regard were willful. Nevertheless, respondent was asked by a commission investigator to produce his employee payroll records. He was unable to do so. Although he had the opportunity during the evidentiary hearing to present witnesses on his behalf and

appropriate records from his law practice, *see* Md.Rule BV10, the record is completely devoid of any evidence of employee or tax record keeping on the part of respondent. Thus, Judge Price properly concluded that employment records for respondent's employees were neither prepared nor maintained.

### E. *Failure to Have Employees Complete W–4 Forms*

 In support of his objection to the finding that he failed to provide W–4 forms for his employees to complete, 26 U.S.C. § 3402,[10] respondent argues that there was no evidence or testimony that the proper information, *i.e.*, I.R.S. Circular E and Maryland Withholding Tables, was not available in his office at all times. We note that respondent introduced no evidence to support this contention. Moreover, the basis of his objection is misplaced. Whether or not these and other materials were in respondent's office at all times is irrelevant. As an employer, he had an obligation to provide them to his employees, and obtain social security numbers and other relevant withholding information so that he could make proper deductions from their wages. He did not present any evidence to the hearing judge to indicate that he obtained that information, nor did he explain his failure to do so. Thus, the finding is supported by clear and convincing evidence, and we accept it.

### F. *Failure to Provide Employees with W–2 Forms*

 As for Judge Price's finding that respondent willfully failed to provide withholding information to his employees via W–2 forms, as required by 26 U.S.C. §§ 6051 and 7204, and § 10–911 of the Tax–General Article, respondent states that (1) his secretary's testimony shows that she was instructed to contact respondent's accountant, Allen Anderson, regarding taxes and there was no evidence that she did so and (2) there

---

10. 26 U.S.C. § 3402(a)(1) provides in part that:

Except as otherwise provided in this section, every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary. . . .

was no evidence that respondent willfully denied Ms. Yeadon a W-2 form.

Respondent's recollection of Ms. Yeadon's testimony and the other evidence is not completely accurate. According to Ms. Yeadon, she asked respondent for a 1989 W-2 form in January 1990 and he told her to ask Mr. Anderson about it. She did so, and Mr. Anderson said he would send the form, but he did not. She also asked respondent for a 1990 W-2 form in early 1991, but he failed to provide her with one.[11] Moreover, as discussed above, respondent's failures to comply with known legal obligations are properly characterized as willful. The evidence shows clearly and convincingly that respondent knew his employees were not receiving W-2 forms, but did nothing to correct the problem. Thus, we accept Judge Price's finding that respondent failed to ensure that his employees received W-2 forms.

G. *Responsibility for Failure to Comply with the Law*

■ Despite respondent's protestations that the ultimate responsibility for maintaining proper records and fulfilling tax obligations rested with his employees [12] because "[a]ll that was necessary was for the respective secretary to write the checks and fill out the file forms[,]" Judge Price properly concluded that the day-to-day affairs of respondent's practice were respondent's responsibility. *See Attorney Griev. Comm'n v. Dacy,* 313 Md. 1, 5, 542 A.2d 841 (1988) ("[H]ad the respondent exercised a reasonable degree of supervision over [his employee], he might have detected her error before any ethical proscriptions had been violated."); *Attorney Griev.*

---

11. Similarly, Ms. Tome never received a W-2 form, but respondent does not address that fact in his exceptions.

12. Respondent has tried to place the blame for his inadequate tax preparation on his secretaries: "I fail to see how the Court can conclude that the responsibility did not fall on the employee to properly prepare and keep the necessary records to have the forms prepared; and if they were incompetent to do so not to see that they were delivered to someone who could prepare the forms and figure the necessary taxes."

*Comm'n v. Goldberg,* 292 Md. 650, 655–56, 441 A.2d 338 (1982) ("An attorney may not escape responsibility to his clients by blithely saying that any shortcomings are solely the fault of his employee. He has a duty to supervise the conduct of his office."). *See also Matter of Wines,* 135 Ariz. 203, 660 P.2d 454, 457 (1983) (attorney's placing blame on poor office procedures and inefficient secretarial staff for his failure to remit income taxes was misplaced). Respondent may not assign his legal obligations as an employer to his employees. Thus, although respondent may have properly asked his employees to complete the necessary tasks, it was ultimately his responsibility to see that his obligations under the law were met. This he failed to do. Judge Price properly concluded that respondent is responsible for the shortcomings.

## H. *Personal Taxes*

 In addition to the above failures in the conduct of his business, Judge Price found that respondent willfully failed to file personal income tax returns for the calendar years 1988, 1989, and 1990 in a timely fashion as required by law. Although respondent contended that he did not believe he was earning any income after expenses, Judge Price found that he lacked credibility, and rejected his contentions.[13] He also found that respondent alone was responsible for his failure to file his tax returns.

Bar Counsel admitted into evidence copies of respondent's 1989 and 1990 tax returns which were prepared and signed by respondent's accountant on 20 February 1992. Although respondent argues that he was granted extensions, rendering his filings and payments timely, he failed to provide any documentary evidence showing he requested or received extensions.

---

**13.** Respondent also argues that the lack of prosecution by federal or state authorities precludes a disciplinary charge and finding of misconduct in this matter. That argument is without merit. *See generally Attorney Griev. Comm'n v. Baldwin,* 308 Md. 397, 402, 519 A.2d 1291 (1987) (lack of criminal prosecution for failure to withhold employee taxes did not prevent Bar Counsel from charging attorney with disciplinary violations and Court from imposing sanction).

He did not offer any documentary evidence that he filed any return for 1988.

Moreover, respondent failed to produce any evidence that the taxes owed have in fact been paid. Although he testified that there were no taxes due for the years in question, he was unable to explain why the copies of the 1989 and 1990 returns indicate amounts owing of $338.00 and $149.00, respectively. We accept Judge Price's finding that respondent failed to file his tax returns in a timely fashion. The above facts, combined with respondent's lack of credibility, constitute clear and convincing evidence in support of the hearing judge's finding.

The remaining issue is whether respondent's failure to file and pay his personal taxes was willful. Using the standards for willfulness already articulated, we find that Judge Price's determination is supported by clear and convincing evidence. The need to file annual tax returns is a known legal duty, and respondent has not shown that his failure to uphold it was the result of accident, mistake, or other innocent cause. *Johnson, supra,* 294 Md. at 518–19, 451 A.2d 330. Given the fact that respondent was aware of his duty to file, and that he failed to do so until prompted by this investigation, Judge Price's finding that his failure to file was willful is sustained.

## COMPLAINT BY BAR COUNSEL

### A. *Misrepresentation to the Commission Investigator*

In the course of this investigation, respondent was interviewed by Joseph Lawrence, an investigator for the Commission. Mr. Lawrence asked for employment records of Ms. Tome, but respondent said that none existed because of the short duration of her employment. He was similarly unable to produce employment records for any other employees. According to Mr. Lawrence,

Mr. Boyd told me that there had been no secretary since Carpenter who had worked for him more than a couple of weeks. And that was in his response to my question,

"Where are the records for the, the secretary that worked for you after Miss Tome, or before Miss Tome?" He said ... in response to that question he said, "I have not had a secretary to work for me more than a couple of weeks, so I had no occasion to take, deduct taxes."

Other evidence irrefutably established, however, that Mr. Boyd's statement was not truthful; Sandra Yeadon worked for him for almost two years. Accordingly, Judge Price found that respondent knowingly made a false statement of material fact to the investigator, in violation of Rule 8.1(a) of the Rules of Professional Conduct.

Respondent contends that the investigator's testimony is the product of a misunderstanding. He claims that he never intended to indicate that Ms. Yeadon only worked for him for a few weeks. Rather, he believes that Mr. Lawrence asked whether he had any employee records from the last year, and respondent replied in the negative because no one in the last year had worked for him for more than a short time. Because Ms. Yeadon had worked for him prior to that time, he did not include her in his response to the question. Alternatively, respondent suggests that Mr. Lawrence may have wrongly attributed the statement to him; because the investigator interviewed others on the same day, he may have received that response from one of them. In any case, respondent contends that he never misrepresented anything to Mr. Lawrence.

In this instance, the finding is based almost entirely on a determination of credibility. In this, as in virtually every other matter about which the respondent testified, Judge Price found that the respondent lacked credibility. He accepted the testimony of Mr. Lawrence as accurate, and this furnishes an entirely sufficient foundation for the finding of fact.

### B. *The Mace-to-Calvert-to-Luby Sale of Property*

The remaining violations relate to a real estate transaction in which respondent acted as settlement agent and to respondent's representation of Michael Luby. The real estate

transaction involved a piece of property in Rising Sun, Maryland, initially owned by Willard and Anne Mace. The record discloses that Michael Luby had earlier entered into a contract with the Maces for the purchase of the property, but had defaulted on the contract. The Maces became disenchanted with Mr. Luby, and apparently did not wish to have further dealings with him. Although it is not clear who structured the transaction, arrangements were made for the sale of the property to Luby's wife, through Wayne Calvert, an intermediary.

Calvert executed a contract with the Maces to purchase the property for $335,000, and respondent conducted the settlement of that contract. On the following day, Calvert conveyed the property to Keely Luby, wife of Michael Luby, for an alleged purchase price of $625,000. Keely Luby obtained a loan on the property from Capital Mortgage Bankers, Inc. (Capital Mortgage) in the amount of $438,363.50. Because Calvert was being used only as an intermediary, it was never contemplated that he would receive anything other than a nominal payment for his participation. Thus, Keely Luby was not required to pay the $625,000 purchase price reflected by her contract with Calvert, and in fact received excess funds as a result of the mortgage from Capital Mortgage. Part of the funds received from the Capital Mortgage loan were used to pay the Maces. A part of Calvert's initial purchase price was secured by a $50,000 note, which Calvert apparently did not pay.

Respondent was the settlement agent for both parts of the transaction. He drew the deed from Calvert to Keely Luby with a recitation that it was given for no consideration. Based upon this recitation and the deed, respondent was able to record the deed without payment of a recordation tax. *See* § 12–104 of the Tax–Property Article, Maryland Code (1986). When the clerk of court examined the mortgage that was recorded in favor of the lender, and saw that the amount of the mortgage exceeded the total consideration reported by respondent for the sale, she questioned the certification in the Calvert-to-Luby deed. Respondent then acknowledged that a

greater consideration was involved. The clerk added a corrective note to the deed and collected the additional recordation tax. Judge Price found that:

> The respondent prepared a deed showing no consideration, when in fact consideration was paid, in an attempt to record the instrument without paying the required recordation tax, in violation of §§ 12–104 and 14–1010 of the Tax Property Article ... and Rule 8.4 of the Rules of Professional Conduct.

> The respondent willfully failed to pay recordation tax on a deed when it was recorded, in violation of § 14–1010 of the Tax Property Article ... and Rule 8.4 of the Rules of Professional Conduct.

Respondent suggests that his initial certification that the transfer of the property from Calvert to Luby was without consideration was simply a "mistake." Judge Price was not obliged to believe this contention, and the facts of the transaction, well known to respondent at the time he drew the deed, support the finding of the hearing judge.

### C. *The Attorney Trust Account*

 On March 16, 1990, the date of the second settlement, respondent deposited the loan check from Capital Mortgage in a trust account established in his name. The account was held by Delaware Trust Bank. At that time, Delaware Trust Bank was not an approved financial institution in accordance with the Maryland BU Rules regarding attorney trust accounts.[14]

---

**14.** Respondent does not take exception to this finding, nor to Judge Price's conclusion that respondent violated § 10–302 of the Business Occupations & Professions Article of the Annotated Code and Rules 1.15(a) and 8.4 by placing the money in an unapproved account, but he protests "that it was an unintentional violation and the matter was rectified as soon as he was notified of the problem." Respondent testified that he was unaware that Delaware Trust Bank was not an approved financial institution until Bar Counsel's investigator informed him; that he then went to the bank and told officials there that the bank was not approved, to which the bank officials suggested that the parent bank might be; and he stopped using that bank as soon as he found out that it might not be on the approved list.

Thus, the judge found that respondent deposited money into an attorney trust account in an institution which was not approved, in violation of § 10–302 of the Business Occupations & Professions Article of the Annotated Code of Maryland [15] and Maryland Rule BU1, *et seq.*

We agree with Judge Price's finding in this regard. Respondent admits that he established the account. The law pertaining to attorney trust accounts is both simple and clear, as is the list of approved institutions. Respondent either failed to read it or chose to violate it. In either case, we accept Judge Price's finding that Delaware Trust is not an approved institution for the purpose of establishing an attorney trust account, and respondent established such an account there.

Several weeks after the completion of the land sale transaction, Michael Luby asked respondent to send a check in the amount of $95,000 to A. Freeborn Brown, an attorney who was representing Michael Luby against Mr. and Mrs. Dunn, who had a claim against Luby. Apparently Luby wanted Brown to have a check to show to a prosecutor for the purpose of avoiding criminal charges against Luby in connection with the claim. On or about April 9, 1990, respondent mailed a check in the amount of $95,000 to Mr. Brown, postdated to April 14, 1990.[16] Brown presented the check for payment on April 12, and it was dishonored for insufficient funds.

---

15. Section 10–302 (Attorney Trust Account) provides in pertinent part:
 (a) Required.—Unless a lawyer or the firm of the lawyer maintains an attorney trust account in accordance with this subtitle and the Maryland Rules, the lawyer may not accept trust money.
 (b) Approved financial institution.—Each attorney trust account shall be maintained at an approved financial institution, as provided in the Maryland Rules....

16. "A postdated check is a perfectly legal and proper instrument and like any other check is payable immediately upon the day of its date." *Amer. Agri. Chem. Co. v. Scrimger*, 130 Md. 389, 396, 100 A. 774 (1917). *See also* Md.Code (1975, 1992 Repl.Vol.) § 3–114 of the Commercial Law Article, providing that the negotiability of an instrument is not affected by the fact that it is postdated.

At the time respondent forwarded the check to Brown, he did not hold funds from Mr. or Mrs. Luby sufficient to cover the check, nor did he have a reasonable expectation of receiving funds from Luby before the date of the check. Respondent gave several different reasons for having issued a check that was not covered by sufficient funds. On April 15, 1990, respondent wrote the following letter to Brown:

[The check] was drawn on April 14, 1990. This was covered at the time by check number 113 on the account of Keely Lynn Luby number 807–3671–1 in the amount of $100,-000.00 and written on the 9th of April. However, the Luby's have stopped the payment on the check as per stop payment order, which is enclosed, on the 10th of April, 1990, therefore, there was, in effect, no money in their trustee account with me as of that date. As soon as I learned of this, I notified your office, not to attempt to negotiate the check, however, apparently they had deposited it prior to the date that it was dated.

The $100,000 check to which respondent referred was in fact issued to him on April 7, 1990. Contrary to respondent's representation, however, that check was never intended to cover the $95,000 check respondent sent to Brown, because respondent never deposited the $100,000 check. Rather, he indorsed it to a third party, Ready Mix Konkrete, to cover a personal debt.[17] Moreover, it is clear that respondent did not hold any funds due to Luby at the time he issued his check to Brown. Judge Price found as follows:

Respondent issued the forementioned $95,000 check on his trust account knowing he had no money in his account with which to cover said check with the sole purpose to deceive Mr. Brown, the Dunns, their attorney and/or the State's Attorney for Harford County. The purpose of the check was for Mr. Brown to have something to show the Dunns' attorney in an effort to deter criminal prosecution of Luby.

---

17. Respondent correctly reported that Mrs. Luby stopped payment on the $100,000 check.

Concerning the incorrect statement respondent made to Brown with respect to the anticipated source of funds to cover the check, Judge Price found:

> The respondent made a material statement to another attorney knowing it was false with the purpose to deceive that attorney, in violation of Rules 8.4(a), (c), (d) of the Rules of Professional Conduct.

The record supports these findings of Judge Price, and respondent's exceptions thereto are overruled.

Judge Price made one other finding concerning the $100,000 check Mrs. Luby had given to respondent. Because that check had the notation "loan" upon it when originally issued, Judge Price found that respondent had negotiated an unsecured loan from his client. We agree with respondent that the facts tend to show that the issuance of the Luby check was a part of a "sham," and not intended as a loan from Luby to respondent. Respondent's exception to this finding is sustained.

### D. *The Horowitz–Luby Conflict*

As a result of his representation of Luby, respondent became acquainted with Howard Horowitz, a New Jersey mortgage broker. On several occasions, respondent had at least general discussions with Horowitz concerning interest rates and the possibility of obtaining loans through him. Some of the conversations took place while respondent was representing Luby in a criminal case in which Horowitz was the complaining witness. Although respondent's testimony at the disciplinary hearing is inconsistent and somewhat ambiguous as to when the conversations with Horowitz took place, he has on other occasions admitted that he sought loans from Horowitz while representing Luby.

Respondent objects to Judge Price's finding, not because he did not solicit loans from Horowitz, but because he claims he was not the attorney of record for Luby in the criminal prosecution at the time he did so. The evidence indicates that

respondent is incorrect and he was in fact the attorney of record for Luby at the time he approached Horowitz.

Respondent's appearance on behalf of Luby was entered on February 7, 1990. Some time later, he moved to withdraw his appearance. Baltimore City Circuit Court Judge Kenneth Lavon Johnson held a hearing on that motion on April 25, 1990, and respondent testified as follows:

I—Mr. Herwitz [sic] is a mortgage broker. I have introduced him to clients of mine who wish to borrow money. I set up a meeting two weeks ago between Mr. Herwitz [sic] and a doctor from New Jersey who is a land developer also and wants to borrow between three and four million dollars, and that man—that doctor hired Mr. Herwitz [sic], signed a contract and hired him as a broker to get him money. I did—I introduced them.

I contacted him again for a loan of a hundred thousand dollars for another client that he also met on that particular occasion.

I've had no contact with Mr. Luby during that time, by the way. I've tried—I've tried at least a hundred times to reach Mr. Luby before doing that and was unable to. I've probably left fifty messages on his answering service in the last week. None of my calls have been returned. There's no way I can represent him here today, not so much because of the conflict there, but because I've gotten no cooperation.

It is obvious from respondent's own statement before Judge Johnson that he did contact Horowitz, the alleged victim in the state's case against Luby, regarding possible loan transactions while he was Luby's counsel of record in that case.

## SANCTION

 Respondent's violations of the Rules of Professional Conduct include willful misrepresentations to a fellow attorney and to an investigator; willful misrepresentation to a clerk of court by falsely certifying that a deed was given without consideration; willful failure to maintain required records and

trust accounts, and to timely file business and personal tax returns; issuance of a check known to be worthless for the purpose of deceiving others; and engaging in a course of conduct that gave rise to a conflict of interest with his client. The hearing judge found that respondent's testimony was not credible, and with justification characterized respondent's several violations as "a willful disregard for the law and the Rules of Professional Conduct." Respondent's conduct and testimony is marked by consistent and deliberate dishonesty. Bar counsel argues that "the absence of any mitigating circumstances, coupled with the overwhelming disregard by the respondent for his ethical obligations" warrants disbarment. We agree. Respondent's name shall be stricken from the rolls of those authorized to practice law in this State.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT INCLUDING THE COSTS OF TRANSCRIPTS PURSUANT TO MARYLAND RULE BV 15C, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ROBERT KENNETH BOYD.