519 A.2d 1291

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Maurice Whiteford BALDWIN.

Misc. (Subtitle BV) No. 28, Sept. Term, 1985.

Court of Appeals of Maryland.

Jan. 28, 1987.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel for the Attorney Grievance Comm'n of Maryland, for petitioner.

William Hahn, Jr., Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

RODOWSKY, Judge.

This attorney disciplinary proceeding concerns the failure of an attorney to report and remit to the State income taxes withheld on his employees' wages.

Bar Counsel, on behalf of the Attorney Grievance Commission, petitioned this Court for disciplinary action against Maurice Whiteford Baldwin (Baldwin), a member of the Maryland Bar since November 13, 1952. We referred the charges to Judge John F. Fader, II of the Circuit Court for Baltimore County for findings of fact.

During the period with which we are concerned, from 1977 through 1983, Baldwin was a solo practitioner in Baltimore County who was engaged principally in real estate settlement work. He employed one or more persons as support staff during this period, with the exception of calendar year 1981 when Baldwin had no employees at all. At all relevant times the Maryland income tax law required "every employer utilizing the services of an employee [to]

deduct, withhold and pay over to the Comptroller of the Treasury, for each such employee in his employ a tax as provided in" Maryland Code (1957, 1980 Repl.Vol., 1986 Cum.Supp.), Art. 81, § 312. Employers are required to file withholding returns with the Comptroller on forms prescribed by him and to pay over, in full, at the time the returns are due, the amount of tax withheld. § 312(h)(1). If the aggregate amount withheld by an employer for any quarter of a calendar year will be at least $300, the employer must file monthly. If the aggregate amount withheld is less than $300, the employer must file quarterly. § 312(h)(2).

Failure to withhold and remit is addressed in § 312(h)(4) which in part provides:

> Any employer ... who negligently shall fail either to withhold the required tax or to pay it to the Comptroller as specified, or both, shall be held personally and individually liable for all moneys so involved.... Any sum or sums withheld in accordance with the provisions of this section shall be deemed to be held by the employer *in trust* for the State of Maryland and by such employer recorded in a ledger account so as clearly to indicate the amount of tax withheld and that such amount is the property of the State of Maryland. [Emphasis added.]

Criminal penalties for violating § 312(h)(4) are found in both § 312(h)(5) and in § 312A(b).[1]

---

1.  Section 312(h)(5) provides:

    Failure to make any return required by this section to the Comptroller or failure either to withhold the required tax or to pay it to the Comptroller as specified, or both, shall be deemed to be a misdemeanor, punishable upon conviction by a fine of not exceeding $1,000 or imprisonment for not exceeding 1 year, or both, in the discretion of the court and in addition thereto such unpaid tax shall constitute a lien in favor of the State of Maryland to the extent provided in § 322 of this subtitle recoverable in the manner therein prescribed or in the manner prescribed in §§ 206 to 211, inclusive, of this article.

    Article 81, § 312A(b) also provided, from 1976 until the penalty was increased by Ch. 162 of the Acts of 1984, that

Form 506 has been prescribed by the Comptroller for remitting withholding tax. It is a card on which the employer is to insert, over the employer's signature, the amount of tax withheld during the applicable accounting period. The Comptroller mails a supply of forms 506 to reporting employers in advance of each calendar year. Apparently based on the prior year's withholding by an employer, the Comptroller schedules an employer for quarterly or monthly reporting and sends an employer a set of four or twelve forms 506 with preprinted due dates.

For 1977 the Comptroller scheduled Baldwin for quarterly reporting. Baldwin filed returns for the first and second quarters at one time, in August of that year. Thereafter, Baldwin filed no returns for the third and fourth quarters of 1977 or for any quarter in 1978. On May 10, 1978, an agent of the Comptroller personally audited Baldwin's withholding records and obtained $500 from Baldwin which was applied in part payment of his obligation for the third quarter of 1977. Based on information obtained in that audit the Comptroller scheduled Baldwin for monthly reporting during 1979 but Baldwin filed no returns for that year.

Baldwin estimates that he was audited six times by the Comptroller during the period relevant to this case. Based on the audit in May 1978 the Comptroller filed a lien against Baldwin for amounts withheld during the last two quarters of 1977 and the first quarter of 1978. With interest and penalty through August 4, 1978, the lien totaled $1,665.53.

In August 1979 the Comptroller obtained a $2,000 payment from Baldwin which was applied to taxes withheld during January through May of 1979, and to the fourth, third, and second quarters of 1978. After that credit Bald-

---

[a]ny employer who wilfully violates any of the provisions of § 312 shall be deemed guilty of a misdemeanor and upon conviction be subject to a fine not to exceed $500 or imprisonment not to exceed six months, or both, in the discretion of the court.

win still had an unpaid obligation for the first quarter of 1978 and for the fourth and third quarters of 1977.

Baldwin filed no returns for the applicable accounting periods in 1980, 1982, or 1983, although required to do so. Following his August 1979 payment Baldwin paid no withholding tax until September 22, 1983. An agent of the Comptroller who had been unable to get Baldwin's attention by a series of telephone calls and written notices had administratively subpoenaed Baldwin and obtained production of his records on September 14, 1983. The agent that day entered an assessment which brought Baldwin's total liability to the Comptroller for withholding tax, including penalty and interest, to $5,066.17.

The record in this case does not contain a running account between Baldwin and the Comptroller. Liens filed against Baldwin reflect that, exclusive of penalty and interest, and as of November 28, 1983, the principal amount of unpaid withholding tax for 1983 was $530.74 and for 1982 was $811.72. Similarly, as of February 10, 1982, the principal amount of unpaid withholding tax for 1980 was $465.15, for 1979, $750.20, for 1978, $403.49, and for 1977, $563.45.

Baldwin liquidated this obligation by the payment of $750 on September 22, 1983, by payments of $500 each on November 14 and December 17, 1984, and on February 8, March 25, and September 5 of 1985, together with a final payment on September 29, 1985, of $2,917.24. That final payment was made approximately a month and one-half before the hearing conducted by Judge Fader.

Judge Fader found that Baldwin experienced a number of financial and personal problems. The bank account from which Baldwin paid his office operating expenses, including payroll, was overdrawn on approximately twenty occasions between 1977 and 1983.[2] Those overdrafts were usually

---

2. These twenty occasions do not include three instances when the Internal Revenue Service seized the funds in Baldwin's operating account (12/19/78—$4,303; 4/3/81—$1,354.55; and 12/12/83—$1,198).

covered within one to five days. In 1977 Baldwin's wife left him. Beginning the following winter, Baldwin supported his adult daughter for approximately six months when she was experiencing emotional and financial problems. Baldwin's loss of two major clients during 1980 necessitated the closing of his Towson law office. He did not reopen an office in Towson until the latter part of 1981. During the interim his office was in the basement of his mother's home. In November 1981 a fire destroyed a farmhouse which he owned. Because the premises were not occupied Baldwin had been unable to obtain insurance to the full value of the improvements and the insurance in force did not exceed the mortgage on the property.

Baldwin is an alcoholic. The disease in his case was at a moderately advanced stage when he was seen by a physician in August of 1985. Baldwin has not been drinking since the spring of 1985. He is currently active in an alcoholism control program. A certified alcoholism counselor testified that the disease caused Baldwin's overdraft problems in the operating account but that it did not prevent Baldwin from understanding his responsibility to pay taxes.

At all times Baldwin caused to be maintained records which clearly indicated the amount of tax withheld. At no time has the State proceeded criminally against Baldwin for failure to file withholding tax returns or for failure to pay the tax when due.

Bar Counsel charged Baldwin with violating each of the following subsections of Disciplinary Rule 1–102(A):

A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Judge Fader found that Baldwin had violated subsection (5) and, consequently, (1). Baldwin does not except to those findings. Bar Counsel has excepted to Judge Fader's failure to find violations of subsections (3), (4), and (6). Consistent with that position, Bar Counsel recommends disbarment.

## I

Bar Counsel's exceptions to the failure to find illegal conduct involving moral turpitude and conduct involving dishonesty, fraud, deceit, or misrepresentation may be treated together. The grounds of the exceptions are (A) factual and (B) legal.

■ Our concern in this case is whether Baldwin violated specific disciplinary rules, as charged. Because we conclude, as hereinafter explained, that Baldwin's conduct did not involve moral turpitude or fraud, it is not necessary for us to determine whether Baldwin's conduct otherwise amounted to a criminal offense.[3]

## A

To decide if Baldwin's conduct involved moral turpitude, dishonesty, fraud, deceit, or misrepresentation Judge Fader drew upon principles which this Court enunciated in cases involving an individual's failure to file federal or state individual income tax returns. The analogy is, in our view, appropriate.

In *Attorney Grievance Commission v. Walman*, 280 Md. 453, 374 A.2d 354 (1977), we rejected the proposition that a conviction under 26 U.S.C. § 7203 for the misdemeanor of willfully failing to file always involves moral turpitude. We

---

3. Consequently, we do not address the *mens rea* element, if any, of the offense established by § 312(h)(5) which does not expressly contain "wilfully," or by § 312A(b) which expressly contains "wilfully."

observed that moral turpitude "has been defined generally as importing 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' " *Id.* at 459, 374 A.2d at 358 (quoting *Braverman v. Bar Association of Baltimore City,* 209 Md. 328, 344, 121 A.2d 473, 481, *cert. denied,* 352 U.S. 830, 77 S.Ct. 44, 1 L.Ed.2d 51 (1956)). In the context of failure to file a tax return we said that "the term connotes a fraudulent … or dishonest … intent." *Id.* (citations omitted). After concluding that fraud was not explicitly an element of the offense under 26 U.S.C. § 7203, we next considered the import of the word, "willfully," in that statute. Federal decisions demonstrated that "willfully" in § 7203 required only that the Government prove a voluntary, intentional violation of a known legal duty, and that the failure to file not be through accident or mistake or other innocent cause. *Walman* held that not every conviction of failure to file under § 7203 is a crime involving moral turpitude but that the issue depends on the particular facts of the individual case.

In *Johnson v. State,* 294 Md. 515, 451 A.2d 330 (1982), we applied the definition of "willfully" articulated for 26 U.S.C. § 7203 in *Walman* to the term "wilful[ly]" as used in Md.Code (1957, 1980 Repl.Vol.), Art. 81, § 320 with respect to the offense of failure by a taxpayer to file that taxpayer's individual Maryland income tax return.

In the case before us Judge Fader, after reviewing the foregoing principles, found that Baldwin knew that he had the responsibility to file forms of some sort at regular intervals and to remit the taxes withheld from his employees but that he did not file returns or pay the tax unless and until he was pressed by the Comptroller. Judge Fader found Baldwin's conduct to be a voluntary and intentional violation of a known legal duty and that the failure to file was not through accident or mistake or other innocent cause. The fact finder further concluded, however, that he was not convinced by clear and convincing evidence that

Baldwin's conduct showed "dishonesty, conduct involving moral turpitude, an intent to cheat or an intent to deprive the State of monies to which it was entitled." This finding was based principally on the effect Baldwin's financial and family problems and alcoholism had on his intent, together with the absence of any evidence that Baldwin falsified or did not maintain records.

Bar Counsel asks us to overturn this fact-finding and to conclude that Baldwin acted with a dishonest intent. Judge Fader's finding is not clearly erroneous. We overrule the exception.

## B

In further support of the exception to the failure to find violations of DR 1–102(A)(3) and (4) Bar Counsel points to Art. 81, § 312(h)(4) which provides that the sums withheld by an employer "shall be deemed to be held by the employer in trust for the State[.]" Bar Counsel sees Baldwin as having voluntarily assumed fiduciary duties when he hired one or more employees. The argument is that once Baldwin withheld Maryland income tax from his employees' wages, the funds became property of the State which Baldwin held in trust. When Baldwin "misappropriated to his own business or personal use funds which should have been maintained for the payment of the withholding taxes," he necessarily violated subsections (3) and (4).[4]

---

**4.** At the hearing on charges Bar Counsel cited *People v. Lyon*, 82 A.D.2d 516, 442 N.Y.S.2d 538 (1981) which held that a New York taxpayer who had failed to report and pay state sales and withholding taxes could be prosecuted for larceny under New York's theft statute. *Cf.* Md.Code (1957, 1982 Repl.Vol.), Art. 27, §§ 340–343. *Lyon* repeatedly cited, and relied on the analysis in, the opinion by the Supreme Court, New York County, in *People v. Valenza*, 108 Misc.2d 86, 436 N.Y.S.2d 937 (1981), *aff'd*, 90 A.D.2d 466, 454 N.Y.S.2d 1018 (1982), *rev'd in part and modified in part*, 60 N.Y.2d 363, 457 N.E.2d 748, 469 N.Y.S.2d 642 (1983). The only tax involved in *Valenza* was sales tax. The New York Court of Appeals held that a provision in the sales tax act for a civil penalty was exclusive and precluded prosecution under the general larceny statute under the circumstances present in *Valenza*. By the Act of July 27, 1984, Ch. 575, § 1, 1984

In the present case we need not elucidate the legal nature and extent of the "trust" referred to in Art. 81, § 312(h)(4).[5] Nor need we speculate on whether, if at all, circumstances in some other case might constitute theft where there was a failure to pay over taxes withheld. Here Judge Fader's findings negate any intent on Baldwin's part which would make his failure to file fraudulent or dishonest, or conduct involving moral turpitude. That § 312(h)(4) refers to withholding taxes as held in trust does not as a matter of law make fraudulent an employer's failure to report or pay over to the Comptroller, any more than a failure to file an individual income tax return, in and of itself, demonstrates moral turpitude or a fraudulent intent as a matter of law.

## II

Although Judge Fader found that Baldwin engaged in conduct that is prejudicial to the administration of justice, he further said that "[t]hat conduct does not adversely

McKinney's Sess.Laws of N.Y. 1736 (codified at New York Tax Law, § 1145(d) (McKinney Supp.1985)), the New York Assembly provided that the penalties set forth in the sales tax statutes do not preclude prosecution under the penal code. This subdivision was subsequently repealed and recodified in the provisions of Art. 37 of the New York Tax Law by the Act of April 17, 1985, Ch. 65, § 33, 1985 McKinney's Sess.Laws of N.Y., effective November 1, 1985.

5. Article 81, § 327, dealing with Maryland Sales Tax, provides in part that "[t]he tax shall be paid by the purchaser to the vendor as trustee for and on account of the State, and the vendor shall be liable for the collection thereof for and on account of the State." *In Rockower Bros. v. Comptroller,* 240 Md. 379, 392, 214 A.2d 581, 588 (1965), we said that "§ 327 makes sales taxes collected by a vendor trust funds subject to the rules of law as to identifiable trust funds in the hands of bankruptcy trustees, receivers or depositaries, and § 328 adds a further provision to insure the revenues of the State—the personal absolute liability of a vendor." *Cf. United States v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971) (The United States is not entitled to a priority over expenses of administration in the straight bankruptcy of an employer for the amount of employees' income and social security taxes withheld and diverted while the employer was a debtor in possession in a Chapter XI proceeding, despite the provision in 26 U.S.C. § 7501(a) that "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.").

reflect on [Baldwin's] fitness to practice law." Bar Counsel excepts to the failure to find a violation of DR 1–102(A)(6).

The report from the fact finder does not explain the conclusion concerning subparagraph (6). We agree with the approach suggested by Selinger and Schoen, " *'To Purify the Bar': A Constitutional Approach to Non-Professional Misconduct,*" 5 Natural Resources Journal 299, 351–52 (1965) where the authors submit that

> [t]o intelligently make such an appraisal [of whether DR 1–102(A)(6) has been violated], a court must ask two questions: (1) Does the misconduct reveal some flaw in the attorney's personality that if manifested in his professional activity would cause him to violate his obligations to his clients, the courts, or fellow attorneys? (2) Is it likely that the deleterious personality trait will be carried over into the attorney's professional life?

Here the evidence demonstrates quite strongly Baldwin's disregard for filing requirements, deadlines, and financial responsibility, at least as to Maryland income tax withheld from his employees. Selinger and Schoen point out that there are "tax cases involving failure to file [which] reveal the kind of disorganized behavior with regard to continuing responsibilities that would alarm any client whose affairs demanded systematic attention." *Id.* at 356 (footnote omitted).

No useful purpose would be served in the instant matter, however, by remanding for further fact-findings on this issue. The purpose of protecting the public can be achieved in this case by relying on the finding that Baldwin's conduct was prejudicial to the administration of justice.

### III

Baldwin's willful failure to file withholding tax returns may seriously impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is a vital consideration in the imposition of disciplinary sanctions. The lawyer, after all, is intimately

associated with administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above that law. [*Attorney Grievance Commission v. Walman, supra,* 280 Md. at 464–65, 374 A.2d at 361.]

Although Baldwin's flouting of the law with respect to withholding did not result in a criminal prosecution, it does involve six years within a period of seven consecutive years. Moreover, Judge Fader found that there were no extenuating circumstances in Baldwin's case. For example, Baldwin's alcoholism did not cause him to fail to file returns and pay taxes.

■ In Walman's case there was a criminal conviction, the failure to file, involving three years, was not fraudulent, and there were no mitigating circumstances. We suspended Walman for three years. In *Attorney Grievance Commission v. Gilland,* 293 Md. 316, 443 A.2d 603 (1982), the attorney was convicted of failing to file federal income tax returns for three years for which he was sentenced to two months imprisonment, a one year suspended sentence, and a fine of $10,000. Gilland had no fraudulent intent but it was found that he had violated DR 1–102(A)(5). There were mitigating circumstances. We suspended Gilland for two years. If the failure to file is accompanied by an intention to cheat the government and fellow citizens by avoiding the payment of substantial taxes justly due, and absent extenuating circumstances, the proper sanction is disbarment. *See Attorney Grievance Commission v. Woodward,* 299 Md. 429, 474 A.2d 208 (1984) and *Attorney Grievance Commission v. Barnes,* 286 Md. 474, 408 A.2d 719 (1979).

■ Here the amounts of tax involved for each reporting period were not large, although, over the years Baldwin's obligation, with interest and penalties, apparently reached a high point of approximately $5,000. The obligation has been satisfied. On the other hand, we reprimanded Baldwin as recently as 1979 for his failure to close an estate with

reasonable diligence. *Attorney Grievance Commission v. Baldwin,* 285 Md. 208, 401 A.2d 480 (1979). Twenty-seven years ago the Circuit Court for Baltimore County suspended Baldwin for eighteen months because of his failure to file a federal income tax return.

Weighing all of these factors, we conclude that, for his conduct prejudicial to the administration of justice, Baldwin should be suspended from the practice of law in this State for a period of eighteen months accounting from thirty days from the filing of this opinion. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

*IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MAURICE WHITEFORD BALDWIN.*