667 A.2d 659

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**George Armando BRESCHI.**

**Misc. (Subtitle BV) No. 38, Sept. Term, 1994.**

Court of Appeals of Maryland.

Nov. 27, 1995.

Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Assistant Bar Counsel, for the Attorney Grievance Commission of Maryland, for petitioner.

Domenic R. Iamele, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

On February 14, 1995, Bar Counsel, at the behest of the Attorney Grievance Commission Review Board pursuant to Maryland Rule BV9, filed in this Court a Petition for Disciplinary Action against George Armando Breschi, Esquire (Respondent). The Petition charges that Respondent violated subsections (a), (b) and (d) of Maryland Rule of Professional Conduct 8.4 [1] by knowingly and willfully failing to file federal and state income tax returns for the years 1989 and 1990.

---

**1.** Maryland Rule 1230 incorporates the Maryland Rules of Professional Conduct. The pertinent rule provisions in this case, Rule 8.4(a), (b), and (d), provide:

**Rule 8.4. MISCONDUCT.**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

. . . . .

(d) engage in conduct that is prejudicial to the administration of justice;

. . . .

Pursuant to Maryland Rule BV9(b), we referred the matter to Judge J. Norris Byrnes of the Circuit Court for Baltimore County to conduct a hearing and report his findings of fact and conclusions of law on the disciplinary charges against Respondent. Judge Byrnes held the hearing on May 18, 1995; his report was filed with this Court on July 6, 1995.

## I

Judge Byrnes found by clear and convincing evidence that Respondent had failed to file his federal 1989 tax return, had been criminally prosecuted in federal court and pled guilty to failure to file, and had been sentenced to probation but no fine:

> "The basis for the charge in this case is Respondent's failure to file his Federal 1989 tax return in a timely fashion. He was charged in the United States District Court for the District of Maryland on a criminal information that alleged that he willfully failed to make an income tax return in violation of Title 26, United States Code, Section 7203.
> "Respondent pled guilty to that charge. On July 21, 1993, the Honorable William M. Nickerson sentenced him to four years probation and ordered that he pay all of the tax deficiencies that were owed, plus interest and penalties, pursuant to a schedule which was to be worked out between Respondent and the probation department.
> "Because Mr. Breschi had a negative net worth of $201,390 and a negative monthly cash flow of minus $985.00, Judge Nickerson found that a fine would be counterproductive, and therefore, did not impose one."

Judge Byrnes also observed that Respondent was *not* criminally charged with failing to file his federal tax return for the 1990 income year, that the 1990 taxes, interest, and penalties had been paid, and that Respondent was "currently under a payment schedule for the monies due on his 1989 return."

Based on these findings of fact, Judge Byrnes concluded that Respondent had violated Rule 8.4(d). He then went on, however, to make additional findings with regard to Respon-

dent's history, motives, and character, paraphrasing the testimony of the many illustrious members of the Maryland legal community who appeared on Respondent's behalf. After briefly introducing Respondent's background, the judge catalogued in great detail the tribulations of Respondent during the years he failed to file income tax returns. We shall quote at length from Judge Byrnes' Memorandum Opinion and Order, as his additional findings are relevant to our holding in this case:

"Respondent was raised in Baltimore City, attended a local high school, a local college, and the University of Baltimore Law School. He has four children, two of whom are in college and one of whom is a freshman in high school. His oldest child is a graduate of the University of North Carolina. After Respondent graduated from college he worked for several years for the Internal Revenue Service. He was a Revenue Agent and performed audits of tax returns. He was promoted to Appellate Conferee. He then reviewed the work of other Revenue Agents. In 1974, he opened his private practice of law in Towson, Maryland, with Charles Chiapparrelli, Esquire. In 1980 or 1981 he began a partnership with Eric DiNenna, Esquire. It was principally an expense sharing partnership.

"In June of 1988, Respondent took on a RICCA [sic] case.[2] It was a case of first impression involving several defendants and well over 400 exhibits. The case was tried during the months of January and February of 1989; a guilty verdict was returned by the jury and on May 11, 1989, Respondent's client was sentenced and then noted an appeal. There were over 5000 pages of transcript. The Briefs were filed in February of 1990. The case was argued before the Fourth Circuit Court of Appeals in September of 1990, and that Court affirmed the jury verdict.

---

**2.** The case to which the hearing judge is referring in this excerpt was the defense of a criminal prosecution of environmental violations under the federal Resource Conservation and Recovery Act of 1976, or "RCRA." 42 U.S.C. § 6901 *et seq.* (1988).

*Certiorari* was denied by the United States Supreme Court.

"On February 10, 1991, Mr. Breschi's son Chuck sustained severe injuries when he was stabbed while at school in North Carolina. Respondent rushed to North Carolina where he spent four days with his son. Respondent's wife then took over the nursing duties and Respondent returned to Baltimore to care for his three younger children.

"In the summer of 1991, Respondent's mother was taken to the hospital due to heart problems. In October of 1991, she underwent a heart operation and then suffered a mild heart attack, but recovered.

"On November 13, 1991 Mario Scilipoti, a Revenue Officer, came to call on the law firm of DiNenna and Breschi. The firm had not paid all of its payroll taxes. They had filed all of the returns, and on that date paid $1,000.00 toward the taxes owed. On November 13, 1991 Mr. DiNenna told Mr. Scilipoti that he had just filed his 1989 tax return but was working with another Revenue Agent. Respondent told Mr. Scilipoti that he had not yet filed his 1989 return and that his 1990 return had not been filed but that he had filed for an extension. Mr. Scilipoti recommended that Respondent file his return within 30 days.

"On November 23, 1991, Mr. DiNenna suffered a heart attack while hunting and died. Respondent called Mr. Scilipoti and told him what had happened and promised to get back to him.

"In January of 1992, Respondent met with Revenue Agent Max Magasamann, and paid off the balance of Mr. DiNenna's personal tax liabilities for the tax years 1988 and 1989. Later that month, he met with Mr. Scilipoti and paid him a total of $19,600.00 in back payroll taxes, representing the second and third quarter payments for 1990. It was at that time Respondent began to put together documents for his 1989 and 1990 returns, as well as the documents needed to prepare and file Mr. DiNenna's 1990 return.

"In February of 1992, Respondent was contacted by a U.S. Attorney who told him that he was the subject of an

investigation involving the Parlez Cafe. Because of the investigation, the Internal Revenue Service ran a check on Respondent's filings and discovered that he had not filed the 1989 or 1990 returns.

"During the end of March and beginning of April, 1992, Respondent filed the following returns: the 1990 return for the law firm; the 1990 return for Mr. and Mrs. DiNenna; the 1991 return for Mr. and Mrs. DiNenna; the 1989 return for Respondent and his wife; and the 1990 return for Respondent and his wife."

After reviewing the above chronology of events in Respondent's life at the pertinent times, the hearing judge discussed the impact of some of those events on Respondent. He noted Respondent's testimony that, although Respondent was cognizant of and accepted responsibility for the *civil* penalties associated with failure to file tax returns, he never thought he would be *criminally* prosecuted:

"In explaining his failure to file returns, Respondent testified that the RICCA [sic] trial, which was being tried in the early months of 1989, was overwhelming. Respondent would spend all day in court, prepare witnesses, and then return to his office in Towson and try to work on other cases. This schedule was confirmed by the testimony of Francis X. Borgerding, an associate in his office. Respondent filed for an extension on April 15, 1989 and again on August 15, 1989; with the initial extension he sent a check for $300.00. He said he knew that this would result in the opening of a file. . . .

"As has been noted, Respondent was a former IRS Agent. He was aware of the criminal penalty associated with failing to file, but he did not think it would happen to him. He recognized that he would have to pay the penalty and interest and did not consider that he was getting away with anything.

"In 1989 and 1990, Mr. Breschi had two mortgages on his home, was paying $16,000 in tuition and over $600.00 per month in car payments. He was frequently behind in some

of these payments. He would use a home equity loan to help run his law practice. He did not take any vacation, made no improvements to his home, and worked as much as he could. He does not have a drinking or gambling problem."

Several character witnesses were called, including the widow of Respondent's former partner, his staff, several prominent lawyers, and three judges; all testified that Respondent was of high moral character, trustworthy, honest and capable. The hearing judge quoted the testimony of several witnesses, including two who noted that Respondent had still taken the time and energy to help them during this difficult period of his life.

Judge Byrnes concluded his opinion by finding deep remorse and a lack of intent on the part of Respondent, and recalling the words of one of the character witnesses, who analogized Respondent to the cobbler whose children had no shoes:

"[Bar Counsel] does not contend that Respondent intended to defraud the government out of the money that was owed. Judge Nickerson reached that conclusion on July 21, 1993, when he stated, 'I believe [t]here was no intent on [Mr. Breschi's] part to cheat the government....'

"The Court finds that Respondent is deeply remorseful. He never intended to defraud the government out of the money he owed. He naively considered the fact that he would have to pay interest and penalties as the 'punishment' he would pay for his delinquent behavior.

"It is ironic that his experience with the Internal Revenue Service lulled him into putting his own affairs behind those of his clients and friends....

"This case was best summed up by Judge [Joseph] Murphy [of the Maryland Court of Special Appeals] when he likened the Respondent to the cobbler with nine children but who had no shoes. Respondent spent his time taking care of the problems of others and neglected to take care of his own legal obligations."

## II

This Court makes the ultimate decision as to whether a lawyer has violated professional rules. *Attorney Griev. Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992); *Attorney Griev. Comm'n v. McBurney,* 282 Md. 116, 122, 383 A.2d 58, 61–62 (1978). We determine by an independent review of the record whether the hearing judge's findings of fact are based on clear and convincing evidence, as required by Md.Rule BV10(d). If they are, and if the conclusions of law are not erroneous, we accept them and limit our discussion to any exceptions and the appropriate sanction. *Attorney Griev. Comm'n v. Boyd,* 333 Md. 298, 303, 635 A.2d 382, 384 (1994); *Attorney Griev. Comm'n v. Kemp,* 335 Md. 1, 9, 641 A.2d 510, 514 (1994); *Powell, supra,* 328 Md. at 287–88, 614 A.2d at 108; *Attorney Griev. Comm'n v. Singleton,* 315 Md. 1, 6, 553 A.2d 222, 224 (1989).

Bar Counsel takes a single exception to the findings and conclusions of Judge Byrnes, alleging error in the judge's conclusion that the disciplinary charges were based only on Respondent's failure to file his federal *1989* tax return in a timely fashion. Bar Counsel argues that the Attorney Grievance Commission charges also include Respondent's failure to file his *1990* tax return, even though, as noted in Part I, *supra,* Respondent was not criminally prosecuted for failing to file the 1990 return.[3] Respondent challenges Bar Counsel's exception, arguing that Judge Byrnes did not consider the facts surrounding Respondent's failure to file an income tax return in 1990 to constitute a rule violation because Respondent had paid the 1990 taxes plus interest and penalties in full.

It does indeed appear to us that Judge Byrnes did not consider Respondent's failure to timely file a 1990 return to be a violation of Rule 8.4(d) simply because the criminal prosecu-

---

**3.** Bar Counsel's Petition for Disciplinary Action cites failure to file *state* income tax returns as well as federal; however, Judge Byrnes makes no mention of the failure to file state returns in his findings or recommendations and Bar Counsel does not except to the judge's omission, so we shall not address the issue further.

tion did not include failure to file the 1990 return. Although criminal prosecution is certainly a factor weighing heavily in favor of finding a violation of Rule 8.4(d), its absence does not necessarily mean the Rule has *not* been violated. First of all, the facts here indicate he could have been prosecuted for failure to file for the 1990 year but escaped such prosecution only as a result of his willingness to plead guilty to willful failure to file the 1989 return. Second, it is clear that Respondent was aware of his legal obligation to file and pay taxes in 1990 and yet consciously failed to do so in a timely fashion or even within the thirty-day period following the visit to his law firm by Mr. Scilipoti, the IRS agent.

■ Moreover, eventual late payment of all monies due does not preclude disciplinary action under Rule 8.4(d), contrary to the assertion of the Respondent. Repayment may mitigate the consequences of the illegal action, but does not mitigate the act itself and therefore does not erase a potential disciplinary violation. *See Boyd, supra,* 333 Md. at 309–10, 635 A.2d at 388 (subsequent curative action in late payment of payroll taxes not enough to mitigate the offense entirely).

■ Regardless of whether Respondent was criminally prosecuted or eventually paid what he owed, Respondent's conduct in willfully failing to file his 1990 tax return and pay his taxes in a timely fashion is inherently "conduct that is prejudicial to the administration of justice" because it violated federal law. We shall sustain Bar Counsel's exception.

After careful review of the record and transcript of the discipline hearing, we are satisfied that there is sufficient clear and convincing evidence to sustain Judge Byrnes' conclusions in all other respects. We shall now determine the proper sanction.

### III

Bar Counsel recommends a sanction of at least two years suspension from the practice of law, consistent with past discipline of attorneys who have not filed income tax returns

in a timely fashion. Respondent, while conceding that a sanction of reprimand has never been employed in a "failure to file" case, suggests that it would be appropriate here because of the unfortunate and even tragic events which occurred in Respondent's life during the years he failed to file the tax returns in question.

Initially, we observe that the primary purpose of attorney discipline proceedings is not to punish the errant attorney, but rather to protect the public from unscrupulous practitioners as well as to maintain public trust in the legal profession by demonstrating intolerance for unprofessional conduct. *Attorney Griev. Comm'n v. Myers*, 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Attorney Griev. Comm'n v. Protokowicz*, 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Griev. Comm'n v. Kramer*, 325 Md. 39, 54, 599 A.2d 100, 108 (1991). We consider the facts and circumstances of each case, including mitigating factors, in determining the severity of the sanction. *Attorney Griev. Comm'n v. Kenney*, 339 Md. 578, 587, 664 A.2d 854, 858 (1995); *Myers, supra*, 333 Md. at 447, 635 A.2d at 1318; *Attorney Griev. Comm'n v. Pollack*, 279 Md. 225, 238, 369 A.2d 61, 68 (1977). In cases where a criminal conviction is part of the basis for discipline, compelling extenuating circumstances may warrant a less severe sanction than is usually meted out for the same rule violation under different circumstances. *See Kenney, supra*, 339 Md. at 588, n. 1, 664 A.2d at 858. We have in the past defined such compelling circumstances as "only those which may cause this Court to view the conviction in a light which tends to show that the respondent's illegal act, committed in violation of a criminal statute, resulted from intensely strained circumstances...." *Bar Ass'n of Balto. City v. Siegel*, 275 Md. 521, 527, 340 A.2d 710, 713 (1975).

One of the most relevant considerations in determining a sanction for failure to file income tax returns is the intention and motive of the respondent. We have rejected the idea that fraud is a necessary element of 26 U.S.C. § 7203, the statutory offense of willful failure to file federal income tax

returns. *Boyd, supra,* 333 Md. at 308–09, 635 A.2d at 387; *Attorney Griev. Comm'n v. Walman,* 280 Md. 453, 461, 374 A.2d 354, 360 (1977); *see also Attorney Griev. Comm'n v. Baldwin,* 308 Md. 397, 404, 519 A.2d 1291, 1295 (1987). We have defined "willfulness" in the context of 26 U.S.C. § 7203 to be a "voluntary, intentional violation of a known legal duty," but not an act necessarily infused with deceitful or fraudulent motive. *Boyd, supra,* 333 Md. at 309, 635 A.2d at 387; *see also Attorney Griev. Comm'n v. Gilland,* 293 Md. 316, 321–22, 443 A.2d 603, 606–07 (1982). Thus, depending on the circumstances of the case, a willful failure to file conviction may not be a crime of moral turpitude. *Walman, supra,* 280 Md. at 462, 374 A.2d at 359–60; *see also Baldwin, supra,* 308 Md. at 404, 519 A.2d at 1295; *Attorney Griev. Comm'n v. Barnes,* 286 Md. 474, 479, 408 A.2d 719, 722–23 (1979). Because motive plays a large part in the determination of proper sanctions, and because in failure to file cases the motive is sometimes deceitful and sometimes not, we have rendered diverse sanctions in such cases over the years.

We shall briefly examine the arguments of counsel as to the proper sanction. Bar Counsel takes the position that although the Commission does not believe Respondent intended to defraud the government, neither does it believe that the troubles Respondent encountered during the pertinent time period are sufficiently mitigating to lessen the severity of the sanction. First, the missed original and extended filing deadlines for Respondent's 1989 returns were in 1990, during the long RCRA trial but *well before* the tragic events relied on as mitigation occurred. Moreover, during the years 1989–1991 in which Respondent failed to file and pay taxes, he made payments on two 1988 cars and a 1992 car, and paid his children's tuitions at private school. During Respondent's hearing, Bar Counsel contended, and we think rightly so, that Respondent's payment of his personal bills (beyond necessities) before his taxes was an improper choice for a lawyer to make:

"Frankly, Your Honor, this is not difficult to understand in our estimation, that is there were choices had to be made.

The choice was Uncle Sam was going to come last and family going to come first. It is not that unusual, but unfortunately lawyers are held to extremely high standards."

Bar Counsel relies for his sanctioning recommendation of a two-year suspension on three cases, *Gilland, supra, Walman, supra,* and *Bar Ass'n of Balto. City v. McCourt,* 276 Md. 326, 347 A.2d 208 (1975), in which the three respondents were prosecuted for and convicted of willfully failing to file income tax returns. They received as professional discipline two-, three- and one-year suspensions from the practice of law, respectively.

In requesting only a reprimand, Respondent counters Bar Counsel's arguments not only with evidence of the tumult which occurred in his life between 1989 and 1991, already documented at length *supra,* but also with evidence that Respondent admits his errors and feels remorse and deep shame at having violated his professional responsibilities and citizen duties. Respondent argues that the cases relied upon by Bar Counsel are all distinguishable, in that the respondent in each case denied any criminal neglect in failing to file his income tax returns, and pled not guilty to the charges in federal court. At oral argument before us, Respondent's counsel asserted:

"So [Respondent] was not only forthright but he was remorseful after he was accused and I think the most important thing and the thing that distinguishes Mr. Breschi from any other case that is cited to the Court is that he accepted the responsibility for his neglect in not filing and that wasn't done by even Mr. Gilland, Mr. Walman—they tried their case. They made the United States government go to its burden of proof. They were found guilty."

We believe *McCourt* is somewhat distinguishable from the instant case. McCourt failed to file federal income tax returns for four years, during which time there is no evidence that he filed extensions or attempted to address his delinquency with the IRS; he was convicted of failure to file for one of those

years and pleaded *nolo contendere* to the other three charges. In the instant case, Respondent's criminal behavior was less egregious. As Respondent notes in his arguments to this Court, *McCourt* is persuasive authority only inasmuch as it supports a lesser sanction for Respondent's behavior than McCourt received.

*Walman* is distinguishable from the facts in the instant case because, although we did not find any moral turpitude in Walman's failure to file, neither did we find any circumstances in the attorney's life which helped both to explain his violation of the law and to mitigate the consequences. Nevertheless, we take note in the instant case of the severity of Walman's sanction (a three-year suspension) because Walman, much like Respondent, apparently had some personal expenses which he unfortunately considered a priority to paying taxes: "[Walman] diverted to personal or family use the very funds with which he might have paid ... the taxes he owed...." *Walman, supra*, 280 Md. at 466, 374 A.2d at 362.

*Gilland*, while not exactly on point, does not concern a fraudulent failure to file and does include mitigating factors. The hearing judge in Gilland's case found that Gilland's conduct was free from "moral turpitude, dishonesty, or fraud," a finding not challenged by Bar Counsel in our Court and accepted by us. *Gilland, supra*, 293 Md. at 318, 443 A.2d at 605. We found that Gilland's negligence in failing to file his federal income tax returns was at least in part attributable to excessive drinking, as well as to a number of family illnesses and tragedies which are strikingly reminiscent of the tribulations of Respondent in the instant case. While finding an "abundance" of mitigating factors in Gilland's situation, we still were compelled to balance the severity of the criminal violation at issue:

"Balanced against these mitigating circumstances, however, is the fact that a member of the Bar stands convicted of voluntarily and intentionally failing to perform a known legal duty. Such willful disobedience to known legal responsibilities may seriously impair public confidence in the

entire profession and this Court will not place its imprimatur on such conduct."

*Gilland, supra,* 293 Md. at 321–22, 443 A.2d at 606–07.

Respondent's criminal misconduct is serious. We cannot minimize such misconduct by merely reprimanding Respondent.

However, we are also disinclined to mete out a two-year suspension, as Bar Counsel has requested and as Gilland received, because we are persuaded that the traumatic events in Respondent's life during the pertinent period played a significant part in his criminal behavior. Moreover, we are convinced that Respondent, apparently unlike any of the attorneys in the cases cited, acknowledges and regrets his errors and feels tremendous remorse, such that the likelihood of any further transgressions is extremely remote.

Therefore, we conclude that a six-month suspension from the practice of law is appropriate. Respondent shall stand suspended from the practice of law in this State for a period of one hundred eighty days beginning thirty days from the date of the filing of this opinion; he shall stand suspended beyond that time unless all costs incurred in connection with this proceeding are paid in full.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE BV15(c) FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GEORGE ARMANDO BRESCHI.*