758 A.2d 117

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

James F. CHILDRESS.

Misc. AG No. 22, Sept. Term, 1999.

Court of Appeals of Maryland.

Aug. 24, 2000.

**374**

Melvin Hirshman, Bar Counsel and Dolores O. Ridgell, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, petitioner.

Joseph G. Petrosinelli, Washington, DC, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against James F. Childress, Respondent, for violation of the Rules of Professional Conduct. The petition alleged that Respondent violated Maryland Rule 8.4(d)[1] by engaging "in conduct prejudicial to the administration of justice." Bar Counsel recommends that the Respondent's license to practice law be suspended for one year with his readmission conditioned upon the payment of the costs of these proceedings, continued psychiatric treatment, and quarterly reports from the treating psychiatrist to Bar counsel for two years following the termination of his suspension.

Pursuant to Maryland Rule 16–709(b), we referred the matter to Judge G.R. Hovey Johnson of the Circuit Court for Prince George's County to make findings of fact and proposed conclusions of law. Following an evidentiary hearing, Judge Johnson found that Respondent had violated Rule 8.4(d). Respondent filed exceptions to the hearing judge's findings.

## I.

We glean the following findings of facts and proposed conclusions of law from the report of the hearing judge. Respondent, James F. Childress, is a graduate of Princeton University. He graduated from the University of Georgia Law School in 1989. He was admitted to the Maryland Bar in 1989, and to the District of Columbia Bar. In 1992 Childress was employed by the United States Department of Commerce

---

1. Maryland Rule 8.4(d) provides, in pertinent part, as follows:
 It is professional misconduct for a lawyer to:
 * * * * * *
 (d) engage in conduct that is prejudicial to the administration of justice.

as a patent and trademark attorney. He continued in this capacity until April, 1996, when he was laid off for the conduct underlying this proceeding. At the time of the alleged misconduct, Respondent resided in Arlington, Virginia.

On April 14, 1995, Respondent was arrested in Bethesda, Maryland, at Montgomery Mall, and subsequently charged by a federal grand jury with one count of interstate travel with intent to engage in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b) (1994). In October, 1995, following a jury trial in the United States District Court for the District of Maryland, Respondent was convicted and sentenced to a term of imprisonment of five months, five months home detention, a period of supervised release and a $5,000 fine.[2] As a result of his conviction, on March 12, 1996, Respondent was suspended from the practice of law in the District of Columbia. *See In the Matter of James F. Childress, Esquire,* No. 96–BG–159 (D.C. Mar. 12, 1997).

Respondent appealed his conviction to the United States Court of Appeals for the Fourth Circuit. He contended that at the time he was indicted, tried and convicted, the conduct in which he admittedly engaged was not a crime under 18 U.S.C. § 2423(b). *See United States v. Childress,* 104 F.3d 47, 49 (4th Cir.1996). In December, 1996, the United States Court of Appeals for the Fourth Circuit reversed the judgment of conviction. *Id.* at 48.

The statute under which Respondent was convicted, 18 U.S.C. § 2423(b), defined the term "sexual act" through an apparently mistaken cross-reference to 18 U.S.C. § 2245 (1994). That section refers to sexually abusive "conduct that results in the *death of a person.*" (emphasis added). The Fourth Circuit considered the argument that Congress had meant to cross-reference a different section that defined "sex-

---

**2.** The record reflects that the United States District Court for the District of Maryland, in computing the sentence, departed from the guideline range. Significantly, the court "found that the defendant's diminished capacity justified a downward departure of 3 levels to an offense level 12, providing an incarceration range of 10 to 16 months."

ual act" more broadly.[3] *See Childress,* 104 F.3d at 53. The court determined, however, that the statute, as written at the time of Respondent's offense, did not prohibit his conduct and accordingly, reversed the judgment of conviction. *See id.* Respondent requested reinstatement, and the D.C. Bar Counsel took no exception. As a result, on January 30, 1997, the District of Columbia Court of Appeals ordered that Respondent be reinstated to practice law in that jurisdiction.

Maryland Bar Counsel initiated disciplinary proceedings stemming from Respondent's conduct during the years 1993 through 1995. During that time Respondent used his home computer to communicate with individuals he believed to be young girls via "chat rooms"[4] located on America Online. The girls Respondent targeted were generally between the ages of thirteen and sixteen years old. During some of these conversations, Respondent would ask whether the person was interested in meeting and having sex. For the purpose of convincing the girls to meet him, Respondent would frequently represent that he was younger than his actual age, stating that he was twenty-four years old rather than his actual age of thirty-two. He was able to persuade five young girls to meet with him. These meetings would generally occur in a public place in the Washington D.C. area. On one occasion, Respondent met two girls at the Village Center in Columbia, Maryland. The three drove around in Respondent's car. Respondent also met with a thirteen-year-old girl on three separate occasions in the Manassas, Virginia area. The two drove around and talked. During the meetings with the girls, no sexual contact ever took place and Respondent did not engage in any conversations of a sexual nature.

On April 12, 1995 Respondent signed onto America Online and entered the chat room "X Little Girl Gift," using the

---

**3.** Congress subsequently amended § 2423(b) to refer to the broader definition at 18 U.S.C. § 2246 (1994). *See* Pub.L. No. 104–71, § 5, 109 Stat. 774 (1995).

**4.** A chat room is an area on the Internet that enables people with similar interests to communicate by typing back and forth in real time.

screen name "Sylliboy." Once in the chat room, he began chatting with "ONE4FUN4U," a person claiming to be a 14–year–old girl. ONE4FUN4U was actually FBI Special Agent Patricia Lynn Ferrante. Respondent suggested that the two meet. When asked by Ferrante what Respondent would like to do when they met, he responded with a graphic suggestion of sexual activity.

The next day Ferrante and Respondent had a similar conversation; at this time Ferrante told Respondent she was thirteen years old. They also arranged to meet at the Montgomery Mall in Bethesda, Maryland at 2:00 p.m. on April 14, 1995. The following day, Respondent traveled from his home in Arlington, Virginia to the Montgomery Mall, where he was arrested.

After his arrest Respondent voluntarily sought help for his problems. He started seeing a psychiatrist regularly and began taking medication to control a mental disorder from which he suffered—Obsessive Compulsive Disorder (OCD). Currently, Respondent is married and sees a psychiatrist on an as-needed basis.

As indicated, this Court referred the matter to Judge Johnson. At the evidentiary hearing, Dr. Susan Fiester testified regarding Respondent's mental health. She testified that Respondent suffers from depression, tinnitus, and OCD. Dr. Fiester expressed the opinion that each of these conditions contributed to Respondent's behavior. The OCD caused Childress to be hyper-sensitive to the transmittal of germs and diseases, specifically sexually transmitted diseases. The hearing judge recounted:

> According to Fiester, although Childress suffered from these mental disorders, he was able to succeed in school and in a professional setting. Childress' rituals had no impact on his practice of law, even when his illnesses were not being treated. Fiester testified that she has no knowledge of any recent contact between Childress and minor females and that there is no likelihood of a return of the actions giving rise to this matter. Currently, Fiester testified,

Childress is not suffering from any significant mental disorders and has a good prognosis for potentially coming off medication permanently.

The depression manifested in Respondent a sense of inadequacy when he interacted with women. He subsequently began to feel more comfortable with young girls as he felt they were "non-judgmental" and less likely to carry sexually transmitted diseases. Respondent testified that he kept a "safe sex kit" in his car that contained condoms, dental dams, latex gloves, alcohol, and hydrogen peroxide.

## II.

Respondent filed the following exceptions to the hearing judge's findings. He excepts to the hearing judge's factual finding that Respondent's sexually graphic conversations were with more than one young girl. He also excepts to the hearing judge's conclusion that he violated Rule 8.4(d).

This Court has original and complete jurisdiction over disciplinary proceedings. *See Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999). We therefore make an independent, in-depth review of the entire record, with particular attention to the evidence relating to the disputed factual findings. *See Bar Ass'n of Baltimore City v. Marshall*, 269 Md. 510, 516, 307 A.2d 677, 680–81 (1973). The hearing court's findings of fact, however, are deemed *prima facie* correct and will not be disturbed unless they are clearly erroneous. *See Attorney Grievance Comm'n v. Goldsborough*, 330 Md. 342, 347, 624 A.2d 503, 505 (1993).

We turn first to Respondent's exception to the court's factual finding that "[s]ome of the discussions with minor females involved graphic conversations regarding sex." Respondent argues the record reflects that he had only one sexually explicit conversation with a young girl. He contends that the only other sexually graphic conversation was with Agent Ferrante, who is not a young girl.

Our independent review of the record reveals that the hearing judge was not clearly erroneous in making this finding

of fact. When viewed in isolation the statement made by the hearing judge could indicate that the females Respondent had sexually graphic conversations with were in fact minors. When read in context however, it is apparent that he was referring to females Respondent *believed* to be minors. In the sentence immediately preceding the one at issue, the hearing judge states that Respondent used his home computer to communicate with people he believed to be young girls. It is clear that the hearing judge was referring to all conversations at issue before him, specifically the highly graphic sexual conversations with Agent Ferrante, whom Respondent believed to be thirteen years old.

Moreover, the record also reflects that Respondent had sexually explicit conversations with more than one young girl. Respondent admitted at the hearing to having a sexual conversation with a young girl named "Tina97" in which he described in graphic detail what he would like to do with her. He testified that the only other graphic conversation occurred with Agent Ferrante. On cross-examination, however, Bar Counsel reminded Respondent of "Beckey14," a fourteen-year-old girl with whom he discussed one of her sexual fantasies and having orgasms. While the record does not include the details of this conversation, it certainly appears to be a second "graphic conversation regarding sex," which would make the hearing judge's statement accurate. Therefore, Respondent's first exception is overruled.

We turn next to Respondent's exception to the hearing court's conclusion that Rule 8.4(d) was violated. First, Respondent argues that contrary to the Circuit Court's conclusion, Respondent did not violate 18 U.S.C. § 2423(b). Second, he argues that Respondent's conduct was not in and of itself prejudicial to the administration of justice.

The hearing judge concluded as follows:

We hold, however, that based upon the transcripts of the criminal case against Childress and the testimony presented at oral arguments before this Court, there is clear and convincing evidence that Childress committed criminal acts,

namely crossing state lines with the intent to commit a sexual act with a minor. Those findings of fact were never disturbed on appeal. The conviction against Childress was vacated due to an error of statutory construction—a technicality unrelated to the facts of the case. We hold, therefore, that there is clear and convincing evidence that Childress committed a criminal act, notwithstanding his conviction having been reversed by the United States Court of Appeals for the Fourth Circuit. The issue then arises whether Childress' conduct rises to a level that is "prejudicial to the administration of justice." Maryland Lawyers' Rule of Professional Conduct 8.4(d).

We find *Attorney Grievance Comm'n v. Alison,* 317 Md. 523, 565 A.2d 660 (1989), persuasive on this point. As stated in *Alison,* a lawyer, upon admission to the Bar, accepts and agrees to be held to a higher standard of rules of conduct that are significantly more stringent than the requirements of law held to society at large:

> A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. (Preamble to the Rules of Professional Conduct.)

*Id.* at 535.

Behavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be determined to be prejudicial to the administration of justice. *Attorney Grievance Comm'n v. Baldwin,* 308 Md. 397, 519 A.2d 1291 (1987) (holding attorney who failed to report and remit to State income taxes withheld on employee's wages was conduct prejudicial to the administration of justice). We find that Childress' behavior was prejudicial to the administration of justice, as the exhibition of such behavior is likely to impair public confidence in the profes-

sion, impact on the image of the legal profession, and engender disrespect for the court. Therefore, we hold that Childress did in fact violate the Maryland Lawyers' Rule of Professional Conduct 8.4(d)—Misconduct.

█ Respondent argues that the hearing judge erred in determining that he violated 18 U.S.C. § 2423(b) despite the decision by the Fourth Circuit to the contrary. In reversing Respondent's conviction, the Fourth Circuit held that the plain language of § 2423(b) did not prohibit Respondent's conduct. The Fourth Circuit stated:

> At the time of Childress' arrest, indictment, trial, conviction, and sentencing, 18 U.S.C. § 2423(b) by referring to § 2245, did not proscribe criminal liability for the conduct in which Childress engaged. The district court erred, in the absence of contemporaneous legislative history, in treating § 2423(b)'s cross reference to § 2245 as a mistake. At the time of Childress' conviction, application of the statute as written mandated a reversal of Childress' conviction.

*Childress*, 104 F.3d at 53. It is clear that the Fourth Circuit held that Respondent's acts did not constitute a crime under federal law at the time he committed them. Therefore, Respondent is correct that the hearing judge erred in concluding that by his conduct, he violated 18 U.S.C. § 2423(b).

Respondent next argues that he did not violate Rule 8.4(d) because his conduct was purely personal, unrelated to the practice of law and, therefore, is not prejudicial to the administration of justice. Respondent argues that his conduct had absolutely no relationship to his practice of law; that it did not involve clients, client funds, his law office, the courts, the judicial system, or anything else even remotely related to the legal profession. He construes the ambit of Rule 8.4(d) to address conduct that relates in some manner to an attorney's practice of law.

Respondent identifies three types of cases in which this Court has found a violation of Rule 8.4(d) based on private conduct: cases involving drugs, cases involving physical violence, and tax cases. As support, he cites *Attorney Grievance*

*Comm'n v. Painter,* 356 Md. 293, 305, 739 A.2d 24, 31 (1999) (attorney's conduct in beating wife, along with criminal convictions for handgun violations and battery is conduct prejudicial to administration of justice), *Attorney Grievance Comm'n v. Gilbert,* 356 Md. 249, 252, 739 A.2d 1, 2 (1999) (attorney's possession of crack cocaine is conduct prejudicial to the administration of justice), and *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 600, 667 A.2d 659, 664 (1995) (attorney's criminal conduct in failing to file federal income tax returns is conduct prejudicial to the administration of justice).

In response, Bar Counsel asserts that Respondent's characterization of his conduct as purely private conduct might be more persuasive if Respondent's conduct was limited to adults, or at least individuals he believed were adults. Respondent's conduct involved his solicitation of young girls over the Internet, where he would tell them that he wished to have sex with them, and it was important that they not tell their parents about the conversation or the meeting. The conduct was not limited to Internet communications, but included meetings in Virginia and Maryland, without the knowledge of the girls' parents.

This Court has recognized that a lawyer is subject to professional discipline under the Rules of Professional Conduct for conduct the lawyer engages in outside his or her role as a lawyer.[5] *See Painter,* 356 Md. at 305, 739 A.2d at 31

---

**5.** Noting that out sister states reached the same conclusion that the reach of the disciplinary rules is not limited to conduct committed only in the practice of law, in *Attorney Grievance Comm'n v. Shaw,* 354 Md. 636, 655, 732 A.2d 876, 886 (1999), we cited:

*Florida Bar v. Schultz,* 712 So.2d 386 (Florida 1998) (suspension for intentionally misrepresenting intent to pay a travel agent); *In re Warren,* 167 Vt. 259, 704 A.2d 789 (1997) (public reprimand was warranted, where an attorney sent letters offering to help a woman get divorced at no cost to her, but great expense to her husband); *In the Matter of Pepe,* 140 N.J. 561, 659 A.2d 1379 (N.J.1995) (suspension for using marijuana and sharing it with others); *Iowa State Bar Ass'n v. Hall,* 463 N.W.2d 30, 31 (Iowa 1990) (falsely obtaining loan from a bank, giving false deposition testimony about the loan, and negligently entering into business transactions with clients warranted disbarment); *Haimes v. Mississippi Bar,* 601 So.2d 851, 852 (Miss.

(repeated acts of domestic violence against wife); *Breschi,* 340 Md. at 600, 667 A.2d at 664 (willful failure to file tax returns); *Gilbert,* 356 Md. at 252, 739 A.2d at 2 (possession of crack cocaine); *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 385, 692 A.2d 465, 466 (1997) (failure to report to court-ordered DWI clinic); *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 257, 619 A.2d 100, 102 (1993) (breaking and entering); *Attorney Grievance Comm'n v. Lazerow,* 320 Md. 507, 508, 578 A.2d 779, 779 (1990) (misappropriation of home purchasers' money); *Attorney Grievance Comm'n v. Greenspan,* 313 Md. 180, 182, 545 A.2d 12, 13 (1988) (making false representations to savings and loan institution); *Attorney Grievance Comm'n v. Proctor,* 309 Md. 412, 413, 524 A.2d 773, 773 (1987) (possession of controlled dangerous substances); *Attorney Grievance Comm'n v. Silk,* 279 Md. 345, 346, 369 A.2d 70, 71 (1977) (mishandling, misappropriating and/or embezzling funds of the Mount St. Joseph Father's Club); *Maryland State Bar Ass'n v. Hirsch,* 274 Md. 368, 371, 335 A.2d 108, 110 (1975) (bribery); *Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 544, 318 A.2d 811, 812 (1974) (willfully evading payment of income taxes); *Fellner v. Bar Ass'n of Baltimore City,* 213 Md. 243, 245, 131 A.2d 729, 730 (1957) (inserting slugs into parking meters). *See also* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 3.3.4, at 97 (1986) ("A traditional view is that a lawyer is subject to professional discipline for conduct that the lawyer engaged in outside his or her role as a lawyer.") Under the Rules of Professional Conduct, an act or omission by an attorney which violates the rules of professional misconduct is not limited to conduct which occurred in the course of an attorney-client relationship. Maryland Rule 16–701(k) defines misconduct as follows:

"Misconduct" means an act or omission by an attorney, individually or in concert with any other person or persons which violates the Maryland Rules of Professional Conduct,

---

1992) (disbarment of an attorney who mishandled funds while serving as guardian for an estate); *In re Kennedy,* 542 A.2d 1225, 1226–27 (D.C.App.1988) (suspension of attorney for deceiving a bank into giving him a loan).

as adopted by Rule 16–812, *whether or not the act or omission occurred in the course of an attorney-client relationship.*

(Emphasis added.)

We have also held that a criminal conviction is not a condition precedent for a finding of a violation of Rule 8.4(d) and conduct prejudicial to the administration of justice. *See e.g. Breschi*, 340 Md. at 600, 667 A.2d at 664 (holding that willful failure to file tax return and timely pay taxes "is inherently 'conduct that is prejudicial to the administration of justice' because it violated federal law." This was so "[r]egardless of whether Respondent was criminally prosecuted or eventually paid what he owed.").

 It is thus apparent that under certain circumstances, a lawyer may be sanctioned for conduct unrelated to the practice of law. It is also clear that a criminal conviction is not a condition precedent for disciplinary proceedings.

Respondent maintains that his conduct differs from the above cited cases in that his conduct was not criminal, he committed no acts of violence, he caused no harm to anyone, and his actions were in no way connected with the practice of law. In short, he maintains that "[h]owever distasteful that conduct might be, it simply was not 'prejudicial to the administration of justice' in any conceivable sense."

While it is true that a review of our cases might suggest that Rule 8.4(d) has been applied only to conduct which is related to the practice of law, directly or indirectly, or where there has been a criminal conviction or conduct which is criminal in nature, in this case we need not address the margins of Rule 8.4(d) and whether a lawyer's non-criminal, purely private conduct might be a basis for discipline under the Rule.[6] This is so because Respondent's admitted conduct is

---

6. The hearing judge also held Respondent violated Rule 8.4(d) because his "behavior was prejudicial to the administration of justice, as the exhibition of such behavior is likely to impair public confidence in the

arguably criminal conduct. Additionally, the harm, or potential harm, in a stranger soliciting sex over the Internet to young girls, after imploring them to keep the meeting a secret from their parents, is patent.

■ Respondent admitted proposing sexual intercourse with "Cat666," a child he believed to be under the age of fourteen. Bar Counsel alleged in the Petition for Discipline the underlying conduct which was the basis for the disciplinary proceeding. The hearing judge found that Respondent's conduct was criminal and thus was conduct prejudicial to the administration of justice. As we have indicated, the hearing judge was wrong in finding that Respondent violated 18 U.S.C. § 2423(b). That does not end the inquiry, however, in that Respondent's conduct may still have been criminal. For example, in Virginia, it is illegal for anyone over the age of eighteen to propose the performance of sexual intercourse to a child under fourteen. *See* VA.CODE ANN. § 18.2–370 (1950, 1995 Supp.).[7] In Maryland, "it is unlawful for an adult wilfully to contribute to, encourage, cause or tend to cause any act, omission, or condition which results in a violation, renders a child delinquent, in need of supervision, or in need of assistance."[8] Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.) § 3–831 of the Courts and Judicial Proceedings Article. An

---

profession, impact on the image of the legal profession, and engender disrespect for the court."

**7.** Section 18.2–370 of the Virginia Code, "Taking Indecent Liberties with Children," provides, in pertinent part, as follows:

Any person eighteen years of age or over, who, with lascivious intent, shall knowingly and intentionally:

 \* \* \* \* \* \*

(4) Proposes to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2–361 \* \* \* shall be guilty of a class 6 felony.

**8.** Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.) § 3–801 of the Courts and Judicial Proceedings Article defines a child in need of supervision, as, *inter alia*, one who "[d]eports himself so as to injure or endanger himself or others."

adult convicted under § 3–831 is subject to imprisonment of not more than 3 years, a fine of $2,500 or both.

Because the hearing judge addressed only the one specific federal violation, Respondent did not have occasion to address whether his conduct at the time he committed the acts was criminal in nature and in violation of Maryland or Virginia law. Under these circumstances, it is appropriate to remand this matter to Judge Johnson for further proceedings, without prejudice to Respondent's right to raise any defense to any of these issues. Following those further proceedings, Judge Johnson should submit a supplemental report.

*IT IS SO ORDERED. COSTS TO ABIDE THE RE-SULT.*